# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| H&R BLOCK TAX SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00109-SRB |
| | ) | |
| JUAN CARDENAS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff H&R Block Tax Services LLC's ("H&R Block") Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. #2). The Court set a hearing on the instant motion for March 3, 2020, at 10:00am. At that hearing, H&R Block appeared through counsel. Defendant Cardenas, Jr. did not appear, although he was provided notice of the motion and hearing on February 26, 2020. After a review of H&R Block's instant motion, all briefing and arguments of counsel, the Verified Complaint, the record, and applicable law, the motion is hereby GRANTED.

**I.     JURISDICTION AND CHOICE OF LAW**

Personal jurisdiction over a non-resident defendant may be obtained by consent or by waiver. *Whelan Sec. Co. v. Allen*, 26 S.W.3d 592, 595 (Mo. App. E.D. 2000). Personal jurisdiction is an individual right, and that may be waived in advance through a forum selection clause contained in a contract between the parties. *Id*. Under Missouri law, contractual choice-of-law provisions are enforced. *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 326 (8th Cir. 2001) (citing *Rheem Mfg. Co. v. Progressive Wholesale Supply Co.*, 28 S.W.3d 333, 339 (Mo. App. E.D. 2000)).

Paragraph 27 of the Franchise License Agreement ("FLA") between the parties, attached as Exhibit 1 to the Verified Complaint, specifies that Missouri law applies and further provides for jurisdiction and venue in this forum. (Doc. #1-1). Thus, Defendant has stipulated and consented to Missouri law as the choice of law and to personal jurisdiction in this Court.

## II.     H&R BLOCK HAS SHOWN THAT IT IS ENTITLED TO THE REQUESTED RELIEF.

The following four factors are properly considered by a district court when determining whether a temporary restraining order should issue: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (citing *Dataphase Sys. Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). The party requesting a preliminary injunction or temporary restraining order bears the burden of proving all the relevant factors. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (internal quotations omitted). Moreover, in considering these factors, a court may properly consider evidence that would ordinarily be inadmissible, such as hearsay, in support of the grant of a preliminary injunction. *See, e.g.*, *Ass'n of Cmty. Organizations for Reform Now v. Scott*, No. 08-CV-4084, 2008 WL 2787931, at *3 n.5 (W.D. Mo. July 15, 2008).

Here, each of the relevant factors support Plaintiff H&R Block's request for the entry of a preliminary injunction to preserve the *status quo* and to protect H&R Block from ongoing irreparable injury attributable to the conduct of Defendant.

**A.     H&R Block Is Substantially Likely to Succeed on the Merits of Its Claims Against Defendant.**

H&R Block has shown a substantial likelihood of success on the merits of its breach of contract claim against Defendant. The evidence presented in Plaintiff H&R Block's Verified Complaint demonstrates Defendant has violated and is actively violating the FLA's reasonable, enforceable noncompetition and nonsolicitation covenants (collectively, the "Covenants"), by which he has agreed to be bound.

**1.     The FLA and Its Covenants Are Enforceable**

Under Missouri law, "[n]on-compete agreements are typically enforceable so long as they are reasonable." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. banc 2006). The Missouri Supreme Court has found that a noncompetition agreement is valid and enforceable if it: (1) "is no more restrictive than is necessary to protect the legitimate interest of the employer"; and (2) can be "narrowly tailored geographically and temporally." *Id.*; *see also Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. banc 1985) ("Covenants against competition must serve a proper interest of the employer in protecting the good will of a business, and must be reasonably limited in time and space.").

Reasonable restrictions are enforceable to protect "the employer's trade secrets or customer contacts." *Healthcare Servs.*, 198 S.W.3d at 610; *see also Osage Glass*, 693 S.W.2d at 74; *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 247 (Mo. App. S.D. 1993) ("[A] covenant restricting an employee's right to compete must be reasonably necessary to protect the employer's legitimate interests and reasonable as to time and geographic scope."). Here, the post-termination Covenants in the FLA protect interests that Missouri recognizes as legitimate and are protectable as a matter of law, including: H&R Block's investment in the parties' transactions; H&R Block's established brand, goodwill, and confidential business information;

and H&R Block's interest in preventing Defendant from unfairly using such assets to compete with H&R Block, diverting away its clients, and obtaining an undue advantage for his competing business.  *See, e.g.*, *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 937 (8th Cir. 2002) ("The Missouri courts have frequently held that . . . substantial and individualized customer contacts are a protectable interest warranting injunctive relief enforcing a covenant not to compete."); *Kessler-Heasley Artificial Limb Co. v. Kenney*, 90 S.W.3d 181, 186 (Mo. App. S.D. 2002) ("Stock in customers, also referred to as customer contacts, are a legitimate protectable interest.").  H&R Block also has a legitimate and protectable interest in protecting its client information and client relationships from use by a competitor.  *See Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 617 (Mo. Ct. App. 1988) ("The employer has protectable rights in trade secrets and customer contacts."); *see also Naegele v. Biomedical Sys. Corp.*, 272 S.W.3d 385, 389 (Mo. App. E.D. 2008) ("In Missouri, the courts have identified two protectable interests of employers: customer contacts and trade secrets.").

In this case, the Covenants are also appropriately narrow in both time and geographic reach.  First, the noncompetition and nonsolicitation provisions are limited to two years after the termination of the FLA, subject to tolling for periods of noncompliance.  Further, the geographic area of the noncompetition provision is limited to Defendant's former Franchise Territory[1] and an area within twenty-five miles of those territories.  *See, e.g.*, *H&R Block Tax Servs. LLC v. Clayton*, No. 4:16-cv-00185, 2016 WL 1247205, at *3 (W.D. Mo. Mar. 24, 2016) (upholding a two-year, 25-mile non-competition agreement in a franchise agreement); *H&R Block Enters. LLC v. Ascher*, No. 4:15-cv-00178, 2015 WL 12746197, at *2 (W.D. Mo. Apr. 3, 2015) (upholding a three- or five-year, 50-mile non-competition agreement under an asset purchase

---

[1] The Franchise Territory is defined by Exhibit A to the FLA.

agreement); *Kessler-Heasley*, 90 S.W.3d at 188 (upholding five-year limit within a 50-mile radius); *Watlow Elec. Mfg. Co. v. Wrob*, 899 S.W.2d 585, 587–88 (Mo. Ct. App. 1995) (upholding five-year time limit); *Champion Sports Ctr., Inc. v. Peters*, 763 S.W.2d 367, 368–70 (Mo. App. E.D. 1989) (enforcing a restrictive covenant barring the seller of a business from competing with it for eight years in three counties); *Long v. Huffman*, 557 S.W.2d 911, 915 (Mo. Ct. App. 1977) (upholding a covenant barring competition for five years within a sixty-mile radius). The Covenants are also appropriate under Missouri law because they were agreed to as part of a business transaction. *See Orthotic & Prosthetic Lab, Inc. v. Pott*, 851 S.W.2d 633, 643 n.4 (Mo. App. E.D. 1993) (explaining that "Missouri courts have long recognized a distinction between covenants ancillary to a sale of a business and covenants merely ancillary to an employment contract, showing substantially greater liberality in enforcing the former").

The Covenants are thus reasonably tailored to protect H&R Block's legitimate interests and are reasonably tailored in time and geographic scope. In turn, they are valid and enforceable under Missouri law against Defendant.

### 2. Defendant Breached the Covenants.

The noncompetition and nonsolicitation Covenants run for two years following the termination of Defendant's FLA (tolled for any periods of Defendant's noncompliance). The FLA was terminated on October 9, 2019, and therefore the Covenants run until *at least* October 9, 2021. The evidence presented through the Verified Complaint establishes that Defendant has failed to turn over H&R Block assets and continue to operate a competing tax business at the former franchise office. Moreover, the evidence also shows that Juan Cardenas, Sr. and Alma Cardenas are acting in concert with Defendant to operate the competing tax business at the former franchise office. In sum, the evidence presented indicates Defendant is violating and has violated the Covenants.

Accordingly, H&R Block is likely to succeed on the merits of its breach-of-contract claim against Defendant, and this factor favors entry of the requested preliminary injunction.

**B.     H&R Block Will Suffer Immediate and Irreparable Injury if Immediate Injunctive Relief Is Not Granted.**

Plaintiff H&R Block has also shown that it will suffer irreparable harm if injunctive relief is not granted. Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct. *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010); *Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. App. E.D. 2015). Courts have also presumed irreparable injury from a breach of a covenant not-to-compete or solicit. *See, e.g.*, *H&R Block Tax Servs. LLC v. Haworth*, No. 4:15-cv-00211, 2015 WL 5601940, at *4 (W.D. Mo. Sept. 22, 2015) ("Irreparable harm also properly is presumed where, as here, there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used."); *see also Osage Glass*, 693 S.W.2d at 75; *Safety-Kleen*, 301 F.3d at 935; *Moore Bus. Forms, Inc. v. Wilson*, 953 F. Supp. 1056, 1062 (N.D. Iowa 1996), *aff'd*, 105 F.3d 663 (8th Cir. 1996). The loss of clients and business is also an irreparable injury. *Assoc. Producers Co. v. City of Independence*, 648 F. Supp. 1255, 1258 (W.D. Mo. 1986); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *Am. Nat'l Ins. Co. v. Coe*, 657 F. Supp. 718, 723 (E.D. Mo. 1986).

As an initial matter, Defendant agreed in the FLA that a breach of the Covenants would cause irreparable injury to H&R Block such that temporary and permanent injunctive relief would be appropriate. Furthermore, if the Court does not intervene immediately to enjoin Defendant's conduct, H&R Block will continue to sustain irreparable damage in the form of lost clients and goodwill. Defendant is competing against H&R Block for its clients, both at and in close proximity to the location of Defendant's former franchise location and other H&R Block

offices. Without a preliminary injunction, H&R Block faces a strong possibility that it will lose a substantial part, if not all, of the clients of the former franchise due to Defendant's breaches and will be inhibited from re-establishing its business in the former Franchise Territory.

Accordingly, based on the authority cited and the evidence presented, this factor also favors entry of a preliminary injunction.

### C. The Balancing of Hardships Weighs in Favor of H&R Block.

As to the balance of hardships factor, the injury to H&R Block's relationships with its clients and injury to its business and assets outweighs any potential harm that the proposed relief may cause Defendant. Any harm to Defendant is self-inflicted and the restraints being placed on Defendant are no greater than those to which he already agreed. *See, e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011) (balance of harms weighed in plaintiff's favor because defendant's harm was "largely self-inflicted"). Having accepted significant financial and other benefits from his agreements with H&R Block, Defendant should not now be relieved of his own obligations. *See Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 846 (8th Cir. 2005) ("Rogers knowingly and voluntarily agreed to be restricted by the covenant, and any perceived harm to him by the enforcement of the agreement is outweighed by the harm foreseeable to Emerson."). In turn, this factor likewise weighs in favor of entering H&R Block's requested relief.

### D. The Public Interest Favors the Issuance of a Temporary Restraining Order.

Lastly, the public interest also favors H&R Block in this case. Missouri courts have specifically found that the enforcement of restrictive covenants serves the public interest, and this Court agrees. *See Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo. App. E.D. 1997) ("Missouri courts recognize that public policy approves employment contracts containing restrictive covenants because the employer has a proprietary right in its stock of customers and

7

their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee."); *cf. Haines v. VeriMed Healthcare Network, LLC*, 613 F.Supp.2d 1133, 1137 (E.D. Mo. 2009) ("'The recognized benefits of reasonably enforced noncompetition covenants are now beyond question.'") (quoting *Lektro–Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265 (7th Cir. 1982)). The public interest is also furthered by preserving the enforceability of contractual relationships. *See Walters v. M & I Marshall & Ilsley Bank*, No. 09-0506, 2009 WL 2069581, at *3 (W.D. Mo. July 14, 2009). Thus, this final factor also weighs in favor of the requested relief.

### III. CONCLUSION

Accordingly, Plaintiff H&R Block's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #2) is **GRANTED**. Defendant is ordered to perform all of his contractual obligations to H&R Block.

**IT IS FURTHER ORDERED** that Defendant and Defendant's officers, agents, servants, employees, and attorneys, and all persons and entities in active concert or participation with Defendant, including without limitation Juan Cardenas Sr. and Alma Cardenas, are preliminarily enjoined from directly or indirectly doing any of the following:

1. Violating the terms of the FLA, attached as Exhibit 1 to the Verified Complaint filed in this action, including without limitation the noncompetition, nonsolicitation, and other covenants set forth in Section 12 of the FLA;

2. Directly or indirectly engaging in any business which offers any product or service the same as or similar to any Authorized Services (as defined by the FLA), including without limitation tax preparation services, in or within 25 miles of the Franchise Territory set forth in the FLA (and described in Exhibit A to the FLA);

**IT IS FURTHER ORDERED** that Defendant and Defendant's officers, agents, servants, employees, and attorneys, and all other persons and entities who are in active concert with them, including without limitation Juan Cardenas Sr. and Alma Cardenas, are preliminarily enjoined from directly or indirectly doing any of the following:

1. Directly or indirectly diverting from H&R Block any person for whom tax return preparation or other Authorized Services[2] (as defined by the FLA) were rendered at any time during the term of the FLA by Defendant or his Franchised Business;

2. Directly or indirectly soliciting by mail, telephone, electronically, via the Internet, in person, or by other means, any person for whom tax return preparation or other Authorized Services (as defined by the FLA) were rendered at any time during the term of the FLA by Defendant or his Franchised Business;

3. Directly or indirectly divulging and using information and knowledge concerning clients, the methods, promotion, advertising or any other systems or methods of operation of H&R Block's business that Defendant acquired by virtue of his operation of the Franchised Business under the FLA;

4. Retaining or using any H&R Block property, including without limitation the client lists, files, tax returns, computer servers, and all other client data of the terminated Franchised Business;

5. Retaining or using any articles which display any of the Licensed Marks (as defined in the FLA) or the trade names of H&R Block, including signs or logos of H&R Block, and to immediately return all such items to H&R Block; and

---

[2] Capitalized terms not defined herein shall have the same meaning as provided in the FLA and its attached exhibits.

6.	Operating the tax preparation office located at 455 S. Bibb Ave., Ste. 742, Eagle Pass, TX 78852.

**IT IS FURTHER ORDERED** that Defendant will immediately:

1.	Cooperate in transferring the telephone number for the former franchise office—(830) 773-5800—to H&R Block;

2.	Provide a copy of the lease for the former franchise office to H&R Block; and

3.	Return all H&R Block property, including without limitation the client lists, files, tax returns, computer servers, and all other client data of the terminated Franchised Business, to H&R Block.

**IT IS FURTHER ORDERED** that, under the circumstances of this case, the terms of the injunction do not pose a material risk of any injury to Defendant, no security is necessary. Nevertheless, a bond in the amount of $1000.00 would be adequate to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained and therefore a bond in that amount shall be filed by H&R Block within ten (10) days of the entry of this Order.

**IT IS FURTHER ORDERED** that this Order shall take effect immediately and shall remain in effect until the trial of this matter or until further Order of the Court.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: March 3, 2020